07-3190-cv
Gorton v. Gettel

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: November 25, 2008          Decided: January 28, 2009)

Docket No. 07-3190-cv

- - - - - - - - - - - - - - - - - - -x

CARRIE GORTON,
            Plaintiff-Appellee,

        -v.-

BRUCE GETTEL,
            Defendant,

SULLIVAN COUNTY BOCES,
            Defendant-Appellant.


- - - - - - - - - - - - - - - - - - -x


    Before:        JACOBS, Chief Judge, WALKER and
                   CALABRESI, Circuit Judges.

    Defendant-Appellant Sullivan County BOCES appeals,

under the collateral order doctrine, the June 22, 2007 order

of the United States District Court for the Southern

District of New York (Robinson, J.) denying Appellant's

motion seeking summary judgment on the ground that it is an

arm of New York State entitled to Eleventh Amendment

immunity.  We affirm.

ANNA J. ERVOLINA, Morris Duffy Alonso & Faley, New York, NY, for Defendant-Appellant.

MICHAEL H. SUSSMAN, Goshen, NY, for Plaintiff-Appellee.

PER CURIAM:

Defendant-Appellant Sullivan County BOCES appeals, under the collateral order doctrine, the June 22, 2007 order of the United States District Court for the Southern District of New York (Robinson, J.) denying summary judgment and holding that Sullivan County BOCES is not an arm of New York State entitled to Eleventh Amendment immunity. We affirm primarily for the reasons given by the district court in its thorough and well-reasoned opinion.

New York Education Law § 1950 permits supervisory school districts in New York State to create boards of cooperative educational services ("BOCES") for the purpose of distributing the cost of certain educational services among school districts. Sullivan County BOCES was created in 1950 pursuant to this statute.

Plaintiff-Appellee Carrie Gorton filed a complaint in 2004 alleging that during her two years of employment as a counselor and recruiter at Sullivan County BOCES, she was

2

harassed repeatedly by defendant Bruce Gettel, a fellow teacher. After discovery, Sullivan County BOCES moved for summary judgment arguing, inter alia, that it is an arm of New York State entitled to Eleventh Amendment immunity. The district court denied Appellant's motion.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity." Woods v. Rondout Valley Cent. School Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citing Lapides v. Bd. of Regents, 535 U.S. 613, 618-19 (2002)). Eleventh Amendment immunity extends to "state agents and state instrumentalities that are, effectively, arms of a state." Id. (internal quotation marks and citations omitted). However, immunity does not extend to suits against "municipal corporation[s] or other governmental entit[ies] which [are] not . . . arm[s] of the State." Id. (quoting Alden v. Maine, 527 U.S. 706, 756 (1999)).

"States and state entities that claim to be arms of the state may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity." Id. at 235 (quoting Tennessee v. Lane, 541 U.S. 509, 514 n.1 (2004)). In considering whether an entity is an arm of the state, we review the district

3

court's factual findings for clear error and its legal conclusions de novo.  See McGinty v. New York, 251 F.3d 84, 90 (2d Cir. 2001)).  The burden is on the party seeking immunity to demonstrate that it is an arm of the state.  Woods, 466 F.3d at 237.

Six factors determine whether an entity is an arm of the state: "(1) how the entity is referred to in its documents of origin; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's financial obligations are binding upon the state."  McGinty, 251 F.3d at 95-96 (citing Mancuso v. New York State Thruway Auth., 86 F.3d 289, 293 (2d Cir. 1996)).  If all factors point in the same direction, a court's analysis is complete.  Id. at 96.  If the factors point in different directions, "a court must ask whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk."  Id. (citing Mancuso, 86 F.3d at 293).  "If the answer is still in doubt, a concern for the state fisc will control."  Id.

We have held that local school districts in New York State are not arms of the state. See Fay v. S. Colonie Cent. School Dist., 802 F.2d 21, 27-28 (2d Cir. 1986), overruled on other grounds by Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 786 (2d Cir. 2002). We reached the same conclusion with respect to New York's local boards of education. See Woods, 466 F.3d at 251. These precedents are influential here, because BOCES share many common features with local school districts and boards of education.

Applying the first factor of the six-part test, the district court observed that the authorizing statute refers to BOCES as "bod[ies] corporate," N.Y. Educ. Law § 1950(6), the same term that the New York Education Law uses to describe school districts, see id. at § 1701. In Woods, we held that characterization weighed against immunity. 466 F.3d at 243-44. The district court reached the same conclusion.

Sullivan County BOCES contests that this factor weighs in favor of immunity because BOCES exist at the discretion of the New York State Commissioner of Education ("Commissioner") and are creatures of New York State law. However, the Commissioner also controls the creation of

5

school districts, see N.Y. Educ. Law §§ 1801-02, which we have held are not arms of the state. Sullivan County BOCES also argues that this factor favors immunity because a BOCES, unlike a board of education, does not govern an entity defined as a municipal corporation. Although this consideration was relevant to our analysis of the first factor in Woods, 466 F.3d at 244, the distinction is insufficient to tip this factor in Appellant's favor. We therefore agree with the district court that the first factor weighs against immunity.

The district court concluded, consistent with Woods, that the second and third factors also weigh against immunity because the New York Education Law provides that "[b]oards of education and school trustees, shall elect the members of [a BOCES]," N.Y. Educ. Law § 1950(2-b), and that BOCES shall be funded by constituent school districts, id. § 1950(4), (5). We agree.

The district court determined that the fourth factor is neutral because the education function in New York is shared between state and local governments, Woods, 466 F.3d at 245-47, and that the fifth factor weighs in favor of immunity because the New York Education Law grants the Commissioner substantial veto power over BOCES' decisions. See, e.g.,

6

N.Y. Educ. Law § 1950(1) (vesting power in Commissioner to establish BOCES boards); id. § 1950(4)(b)(7) (stating that Commissioner shall have final approval of allocation of BOCES expenses among school districts); id. § 1950(4)(d)(1) (requiring Commissioner's approval for provision of any shared service); id. § 1950(4)(p)(a) (mandating that Commissioner approve lease renewals). The district court was correct.

Finally, the district court ruled that the sixth factor weighs against granting immunity, noting our emphasis in Woods, 466 F.3d at 249, on New York Education Law § 1709(8-c), which requires boards of education to "maintain a program of reserves" to cover property loss and liability claims. This provision was deemed significant in Woods because "[t]he existence of this reserve fund suggests that any judgment against a local New York board of education would be paid out of its established fund rather than the state treasury . . . ." Id. Section 1950 of the New York Education Law permits BOCES to establish similar reserve funds. N.Y. Educ. Law § 1950(4)(aa).

Sullivan County BOCES argued in district court--and here--that any judgment would be binding on New York State because it provides BOCES financial support. But as the

7

district court observed, New York State also provides substantial aid to school districts, which are not arms of the state.  There is no evidence that New York State would be liable for indemnifying a judgment against Appellant or that a judgment would come "directly from the state treasury," Fay, 802 F.2d at 27.  Moreover, Woods explicitly rejected the argument that, "because some money in the reserve fund may have been derived from state appropriations, a judgment against [a BOCES] is, in effect, a judgment against the state."  466 F.3d at 249.  The district court's analysis of the sixth factor was correct.

Because the six factors point in different directions, we "must ask whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk."  McGinty, 251 F.3d at 96 (citing Mancuso, 86 F.3d at 293).

Both of these factors militate against immunity. Sullivan County BOCES is a locally run entity affiliated with local school districts; its liability would not reflect adversely on New York State.

And a judgment in this case would not be paid directly from the New York State treasury.  There is some risk of financial harm to New York State by way of increased

8

spending for BOCES services and a reduction in the benefit or value the State gets from its investment. But school districts also receive significant state aid and the same arguments apply to them. Yet we have held they are not entitled to immunity.

Sullivan County BOCES argues that it should enjoy immunity because the legislature has promulgated specific laws governing BOCES and because New York State treats BOCES differently than school districts. This argument does not discharge Appellant's burden of showing that it is entitled to Eleventh Amendment immunity.

For these reasons, the judgment of the district court denying Appellant's motion for summary judgment on the ground of Eleventh Amendment immunity is affirmed.